People v. Norrington. Michael Todd Norrington. 5-15-0402. Whenever you're ready. Thank you, Your Honors. May it please the Court, Mr. Daly. Good afternoon. My name is Michael Websick and I represent Michael Todd Norrington in this matter. I have given, I think, a pretty substantial statement of facts in my brief. Unless there's any questions or you feel that you need any elucidation or elaboration, I'd ask for permission to dispense with a statement of facts statement here. There are four issues that we have raised in our brief. One is the constitutionality of 720 only compiled statutes 5-26-4A10. And we're only attacking subsection A10 of that statute. And we believe it's unconstitutional because it is an overbroad impingement upon the First Amendment rights of individuals in this state. How is it overbroad in that it limits simply the taking pictures of through or under clothing? Now, Judge, as I pointed out in my brief, there are certain situations in which an individual who would be taking pictures, a paparazzi individual, and we don't see that many paparazzis here in Southern Illinois, but in the Chicago area, if there was an actress or an actor for that matter who wore very risque clothes and their picture was taken by the paparazzi, that paparazzi could be subject to a prosecution, therefore a violation of the statute. One of the most more infamous photographs that we pointed out to the trial court was the picture of Britney Spears when she was exiting a limousine, I believe in Los Angeles, and they caught a picture of her naked genitalia. The statute is very broad without any limitations on that. Additionally, as we pointed out, it impinges upon the ability of people to have parody and humor. The people of Walmart, that's a website that mocks the individuals that shop at Walmart or some individuals that shop at Walmart in the way they dress. As a result, we believe that if someone takes a photograph of somebody in a risque or silly outfit at Walmart, they can be prosecuted under this section. Doesn't the section, though, prohibit taking pictures of things that people are trying to keep private as opposed to risque clothing that is inherently at risk of exposing things? But the statute has no exemption for, I guess, for someone who consciously wears risque clothing. If someone wears a micro-mini skirt and he or she bends over and their underwear is exposed and somebody takes a photograph of that, the photographer can be prosecuted under this section. Also, the photographer at a high school or college sporting event, they could be prosecuted for taking a picture of a female cheerleader who does a high kick on the sidelines. If we all use our life experiences, a lot of the NFL cheerleaders wear risque outfits. And if they're doing high kicks, there's a possibility that the photographer can be charged with a violation of that. But that's not the case. I mean, the allegation in this case is that there was a deliberate attempt to invade privacy. And that was the allegation. And I think that the evidence in this case brings us to another issue, that there was no photograph ever produced at trial that showed that Mr. Norrington, the appellant, took a photograph that met the elements of the statute here. Wasn't there enough circumstantial evidence, his admission, as well as the video from the store and the mother's testimony that she saw his hand go underneath his daughter and saw him pressing all the buttons? Well, okay. Judge, I think in that respect, the state says the jury could surmise that he was doing this. But we have, he testified that he wasn't doing it. There was no photographs produced. We have the mother who's understandably upset about having her daughter at a public setting exposed to somebody trying to photograph her daughter. But she never, I don't believe that she was ever able to say that he took a photograph under her shorts in violation of the statute. And Ms. Norrington testified that when he took it, and I'm going to use my little flip phone, my dinosaur here, that he was holding it like this. And I think the photograph, the image at 6-10-35 shows that he's holding his phone like this, not like this. And that is when he admitted that he took the photograph when he was like this, not underneath. So admission of taking the photograph and admission that he then later deleted them after viewing them, do we need to have the actual photograph? Well, Judge, and the statute is real specific. The video record, the photograph, has to be made under or through the clothing. He never said that he took the photograph under the clothing. He said it was perpendicular to the floor. However, the mother said that she actually saw him reach his hand up under the shorts in between her skin and the shorts. And, Judge, I don't believe that the video evidence from the Goodwill store ever demonstrated that he had his hands up her shorts. And I don't believe that the state could argue that. But then you also have the third proposition. Either the video record was made for the purpose of viewing the body or undergarments worn by the complaining witness here. And there was no evidence that showed that he did that for that purpose. He denied that that was his purpose. His purpose, according to his testimony at trial, was to take a picture of her shorts, the outer shorts, not the undergarments. So we believe that this is a statute that governs a content-based prohibition. As such, strict scrutiny is required. And, you know, we can see that the state has a compelling interest in protecting people's privacy. But the way they did this here is far, far overbroad. It's not the least restrictive way. It's going to impinge upon other protected speech photographs in this particular case. And as a relevant case, the Supreme Court this past fall said, you know, the justification for the overbroad challenge is to avoid potential killing effects that overbroad statutes have on the exercise of protected speech. And if you have photographers at sporting events, people who take photographs of celebrities out in the public, if they are worried about, oh, am I going to be prosecuted because the celebrity is wearing something risque, or the cheerleaders, we might see the cheerleaders' undergarments or body parts, you're not going to have that robust type of photography. Yeah, but the statute doesn't say that you can't take pictures of people in compromised situations. It says that you can't take photographs of individuals under or through their clothing. I have to admit, I don't know how you take photographs through someone's clothing. But under the clothing would clearly not be your scenario of the sports photographer getting the cheerleader, unless he's standing under the pyramid. Well, and I would beg to differ with your Honor in this regard. When you see photographers around the basketball court or at a football arena, they're usually down on the field on one knee shooting pictures like that with their cameras raised. I've never seen one underneath the pyramid. Well, no, you're not going to get somebody underneath the pyramid in your precise example. But the possibility of that exists. Amateur photographer at a volleyball game. If my stepdaughter plays volleyball, she'll be the same. Okay. Thank you. You must have a daughter who plays volleyball? Two of them, yes. Good afternoon, Your Honor. May it please the Court. Mr. Websick. Although I typically track opposing counsel's sequencing of arguments, I actually like to start argument four, because in this case there's clearly an error that occurred below, so I do want to address that with the Court. And I think that's an important consideration where we are going to go forward in this case. With the provisor, the defendant's other arguments, I think, need to be addressed as well. Now, withstanding what this Court ultimately does with argument four, because obviously reasonable doubt, constitutionality of the statute, and I think even argument three, where the defendant argues that the Court erred in not granting the motion dismissed, was incorrect. There's an unusual, but maybe not so unusual, set of circumstances here where the parties appear before the Court for purposes of a motion to suppress confession. Almost in every situation, the movement in a motion carries a burden of persuasion. In that regard, then, they have to go forward, they present their evidence, then the burden may shift in some instances like a motion to suppress evidence, rather than a confession to the other side. The Fifth Amendment is its own special feature, however. There, both by constitutional fiat and by statutory fiat, the State, as the respondent in the motion to suppress confession, carries the initial burden to prove by preponderance the evidence that the confession was in fact voluntary. What happened in this case did not follow that procedure at all. The parties appeared before the Court. The Court said, are we ready to go? Everyone said yes. Then the Court invites the defendant to begin. The defendant then puts on evidence, the State stands, moves for a directed finding, which the Court agreed with, which I think, even if that were the standard, would probably be wrong anyway based upon what the testimony was. But nonetheless, the Court agreed with it. That was the end of it. There was no objection. There was no protestation that the order was incorrect or that the burden had been shifted or reversed. The first that it was heard or argued or asserted was at the time of the post-trial motion hearing. So this Court is going to have to address this problem, obviously, because it was an improperly conducted motion to suppress hearing. We acknowledge that and we proposed to the Court several different ways that this could be approached. First of all, I think it's important to note at the outset that this is not a situation where the defendant had been compelled to proceed first or compelled in any way to abide by the erroneous procedure that was conducted here. I think everybody went in, not unsurprisingly, because I said in most instances the movement is going to carry that initial burden and then the opposing side can move for a directed finding. That's often the case with motion practice. But here the State had the initial obligation to present its evidence or at least present evidence to the Court to make that initial finding where the State proved by compounding to the evidence that finding never occurred in this case. Now, it might be a different type of discussion we'll be having if the defendant had objected and the defendant had been compelled to go first. That would be obviously quite problematic. I'm not going to say it's not still, but we have a situation where now at the end of the trial, the time in which this type of error could have been brought out to the Court by the defendant or by anybody was long past. The defendant had already been convicted of its offense. So now what do we do? I'm trying to take a couple of angles at it. One actually approaches from a harmless error standpoint. I understand that the defendant did not object, and so typically a plain error type analysis might be applicable. I do think that it's a situation where a motion to suppress is obviously a critical hearing. So I took the higher evidentiary standard here to say whether this is harmless beyond reasonable doubt. My approach on that really kind of relates back to the argument that we made in Issue 1 with regard to the sufficiency of the evidence. This Court will see, and my argument in this regard is made in reference to the evidence that does not include the defendant's statements. When the Court sees the witness statements, the defendant's statements, when the Court sees the testimony of the witnesses and sees the video, it will see, and I tried to lay out in some detail, the pattern of conduct of the defendant in this case who was following the victim and the victim's mother around the store. It's plainly obvious that he was just sort of kind of hovering in their area for a significant amount of time, immediately follows them to the checkout area, and then you'll see from the video the defendant's actions. The defendant, I know, just sort of parenthetically argues about the way the phone was being held, which is part of the reason why I included the photograph in the argument section itself, because I think that amply demonstrates, which this Court will see over and over again when it sees the video, that the court, that the phone was being held like this, and those are familiar phones and iPhones and selfie cameras and stuff. You know, there's a little button there, you press that and click, click, click, you've got photographs being taken, and he did it over and over and over again, despite the victim's mother attempting to move her from one side to the other, to the other. And I only made it a point because this Court will see the video and will make its own conclusions. But this also relates back to the point that if you look at that evidence, if you look at the witness statements in tandem, the evidence was extremely strong for the defendant's guilt, at least circumstantially, that he committed this offense. True enough, they did not get the photographs. Bear in mind that hours had passed between the time that this happened and when the police went to the defendant's house. Bear in mind that the defendant knew that he'd been caught in the act because the mother confronted him in the store, they followed him out of the store, he literally fled the store, he had a bag of something in his hand, tossed it away and ran out and walked out briskly to his truck and drove off. So there was plenty of time to get rid of the evidence. And again, I argue all this not in reference to the defendant's statements, which corroborate a lot of these factors. Now, let me talk about the defendant's statement here, because that's sort of part two. The confession, if you will, was not really a confession. It was a statement that had value, undoubtedly, but its value was more corroborative than perhaps revelatory, if you will, so to speak. He acknowledged taking the photographs, which I think is plainly evident from the video. He acknowledged that he had a fixation with his victim in her buttocks, which I think is plainly evident from the video as well. He never admitted, as I saw, actually taking a photograph underneath her clothing. And we would acknowledge that the evidence for that largely comes from both what the mother observed the defendant doing and from the video itself. Can I ask, do you think that the video portrays everything that went on? Yes. So, in other words, if it doesn't show his hand actually kind of up in her shorts, then it probably didn't happen as such? I would think that given the fact that the defendant did not admit to that specifically, the state's evidence relied very, very strongly upon that video evidence. Correct. Coupled with the mother's observation, but I do think the video itself is pretty strong. Again, the court will see this video. The court will see the actions, and the court will see that it sort of defies logic that he was doing anything other than taking photographs underneath because of the positioning of the camera. If he were just taking simply pictures of her buttocks, they would not have come out. And you're saying it doesn't matter? Well, what I'm saying is that essentially, well, when we say it doesn't matter, the statement of the defendant doesn't matter in that regard because he doesn't admit to something that they have. I'm saying the statement of the mother doesn't really matter. It does matter. It does matter because she saw it in the act. But it doesn't matter whether or not she was accurate in saying that his hand was actually up in between her skin and her shorts rather than at some lower area shooting the picture up in order to take a picture of her underwear or her buttocks. I think the value of the mother's testimony is largely in relation to her sort of present sense impression about what was happening, coupled with the defendant's actions afterwards. He denied that he was taking the pictures. He says the camera didn't work, and then he immediately flees the store and he enacted like a guilty person would under the circumstances. The defendant, of course, said I got out of there because they were reacting like crazy people maybe. But nonetheless, the jury is allowed to make these sort of determinations on their own. But ultimately, the point I make as we go back to Argument 4 here is that when we look at the defendant's statements and what they were, if we characterize them as improperly admitted, we can see for the sake of argument that they were improperly admitted, they were at worst cumulative of what the other evidence would have shown anyway. So, you know, the biggest value would have been, I think from the state's perspective, the confirmation that photographs were being taken. But again, again, this is not a single, and then, oh, my phone wouldn't work. It's here, the files are here, and the files are here, and the files are here. And this comes on the heels of all the things that he was doing prior to that when he was filming around the store. So that would be a harmless error argument related to that. The final disposition that we argue, and just enough time to get it out, would be that because of the circumstances unique to this case and the fact that there was not an objection, it's our position that there was a hearing, but it was not a complete hearing, it was not a proper hearing. There is authority on cases that I cite for a court to essentially grant this following remedy, if this court disagrees with me, to vacate the defendant's conviction, remand for a proper suppression hearing. If the court denies the suppression motion, then the court has the power to restate the defendant's conviction, and he can appeal from the same. If the court grants the motion to suppress, then the defendant is entitled to a new trial without that statement, which is precisely what the ordinary result is. I'm sorry, go ahead. I have a question. Yes. It's not really extending your time. Are you, because it's not totally relevant to the facts in this case, what would be, in your opinion, taking a photo through clothing? That's a good question. It is. You know when we take you to comics and you buy, like, x-ray specs? That's what I thought, too. But, no, again, it's not really what we have here. So I'm standing my argument. Okay. Thank you. Thank you. The staff, what do we do from here? And our position is you reverse or remand for a new trial without the post-arrest statements. And the reason I say that is during the course of the interview, as testified to by the defendant, the police said, if you cooperate with us, $150, and you'll get to go home and be with your family. Indeed, at the trial, there was a telephone conversation between the defendant and his wife saying, you bring me $150, I'll get to go home. And then at some point in time, the police say, oh, you're being charged with a felony, and it wasn't $150, and you're going home. Additionally, while the defendant never asserted the right to counsel, as people of the oath requires them to, he said, should I have a counsel, should I have an attorney with me? And one of the officers said, no, this will go by much faster if you don't have an attorney. And I would suggest to you that this case is very much like the Wahl decision that came out of this district late 2016, I believe it was, in which an agent from the police told them, you know, if you cooperate with us and let us into your house, you'll be arrested. Well, the defendant lets the police in his house. They find marijuana. He makes some statements. They let him there, let him stay there. The state's attorney then files information and gets an arrest warrant, and he's arrested. This is the type of promises that makes this statement, the post-arrest statements, not voluntary. Let me redirect you for just a moment. With regard to the suppression hearing, there was no objection made at trial with regard to the way the hearing was held, right? That's correct. If that's the case, then how is that, how is forfeiture not on review? Judge, there's two aspects to it. One, the burden of going forward, and two, the burden of proof as suppression hearing. We never objected to the way it was, so implicitly we consented to going first. However, we did not waive, and there's nothing in the record to show that the defendant affirmatively waived his right to have the state prove that the statements were voluntary, and that's what the statute requires. The statute requires the state to show that the statements were voluntary, and he never voluntarily waived, as my brief points out. We would say that this is not harmless error, because as the state concedes here in his argument, it corroborates what the mother said. Before that statement, all they would have is the initial denial by the defendant, the video from Goodwill, which I disagree with the state as to its overwhelming proof of sordidness, and the mother's statement as to what she believed. The post-arrest statements were a very important part to the state's case. If it wasn't an important part, they wouldn't have used it. We also talked about the discovery violations. Here the trial court imposed no sanctions in spite of the clear-cut order from Judge Schwartz saying preserve and produce. They didn't preserve. They didn't produce. Mr. Norrington gets convicted because we can't use any video from the police department to try to build a case at the suppression. There was a portion of the testimony that was given in Room 147 that was preserved between, I think, 229 and 259 on June 12th. Would that include the defendant's written confession during that preserved video? The video from 229 to 259 is a video of a booking area. Room 147 is a room separate down the hallway off the booking area. The booking area is videotaped and audiotaped 24-7. Yet the officer, Officer Murray, said, Oh, I only kept a half hour because the rest of it, in my opinion, was irrelevant. My question is, Officer Murray, who made you the judge in this case? What was your legal training? He decided what was relevant and irrelevant. We don't know exactly what was said between, Mr. Norrington was arrested by 1230, 1245. He was taken to the county jail at 353. All we have is a half hour. But I guess just specifically, the defendant's written confession was not included in that booking area. It was. It was in that 30-minute window. That's what he believed to be relevant.  Thank you, Your Honor. Thank you. The court will take the matter under consideration and issue a ruling in due course. Thank you.